

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

April 13, 1988

Honorable Neal E. Birmingham
District Attorney
P. O. Box 940
Linden, Texas   75563

Opinion No.  JM-892

Re:  Whether a county com-
missioner acting as   ex
officio road  commissioner
may use county  equipment,
materials, and  employees
to lay out  a road  within
limits of an  incorporated
city (RQ-1283)

Dear Mr. Birmingham:

You ask whether  a county  commissioner acting as  ex
officio road  commissioner may  use   county  equipment,
materials, and employees  to lay  out a  road or  alleyway
within the  corporate  limits of  a  city in  the  commis-
sioner's precinct when  the road or  alley is not  part of
the county road system.  We conclude that  under the facts
you provide  a  county  commissioner would  have  no  such
authority.

You supply the  following information as  background.
Several years ago the  commissioners court of  Cass County
adopted a resolution authorizing the county  to assist the
city of Bloomburg, Texas.  You state that  the resolution
is phrased  in  general  terms  and  does  not  specify  a
particular project.  You believe  that it was  intended to
authorize  county  assistance  to  the  city  pursuant  to
article 2352j,  V.T.C.S.   That  statute  authorizes  the
commissioners court of a county to use  county road equip-
ment, construction  equipment,  and  employees  to  assist
another governmental entity  on any project  under certain
conditions.

You also  inform  us  that several  years  after  the
resolution was adopted, a county commissioner, purportedly
acting in his  capacity as  ex officio road  commissioner,
directed county employees  to lay out  an alleyway in  the
city of  Bloomburg with  county  equipment and  materials.
You allege that  the alley serves  no public use  and pro-
vides no public  benefit other than  to provide access  to

fuel pumps at a business establishment owned by the com-
missioner's son. You add that the commissioners court did
not specifically approve the project. The city council
did not request the county's assistance on the project,
although you suggest that the mayor may have requested
such assistance from the commissioner. It is also alleged
that the project was completed in a manner that complies
with article 2352j.

The question you have submitted for our consideration
is whether a county commissioner, acting as ex officio
precinct road commissioner, may use county equipment,
materials, and employees to open up and lay out an
alleyway within the corporate limits of a city when the
alleyway forms no part of the county road system. You
also ask us to determine whether the actions described in
your letter are lawful and, if they are not, what
sanctions are available to deter such actions in the
future.

With respect to your two final requests, we must
first note that the procedures instituted by subchapter C
of chapter 402 of the Government Code do not clothe this
office with the authority to make findings of fact in the
course of rendering an Attorney General's Opinion. We
therefore assume the facts are as you present them, and
express no opinion regarding the accuracy of any of the
allegations made in your letter requesting this opinion.
Also, this office will not in an Attorney General's
Opinion presume to advise your office on the proper
exercise of prosecutorial discretion or on the avail-
ability of a remedy in a particular case. But see Govt.
Code §402.043 (attorney general shall advise a district
or county attorney regarding cases before district or
inferior courts in which the state is interested on the
attorney's request and after his investigation and submis-
sion of a brief to this office). Accordingly, this opinion
is confined to the narrow legal issues presented by your
first question.

County commissioners serve as ex officio road commis-
sioners pursuant to chapter 3, subchapter A of article
6702-a, V.T.C.S. Subchapter A applies to a county only if
the commissioners court adopts the subchapter by an order
of the court at a meeting where all members are present.
V.T.C.S. art. 6702-1, §3.004(b). The relevant powers and
duties of the commissioners court and ex officio road
commissioners are set forth in the following provisions:

## Ex officio commissioners

Sec. 3.001. (a) In all counties the members of the commissioners court are ex officio road commissioners of their respective precincts and <u>under the direction of the commissioners court</u> have charge of the teams, tools, and machinery belonging to the county and placed in their hands by the court. They shall superintend the laying out of new roads, the making or changing of roads, and the building of bridges under rules adopted by the court.

. . . .

Sec. 3.002. (a) <u>The commissioners court shall adopt a system for working, laying out, draining, and repairing the public roads as it considers best</u>, and from time to time the court may change its plan or system of working. The court may purchase teams, tools, and machinery necessary for the working of public roads and may construct, grade, or otherwise improve any road or bridge by contract in the manner provided by Subchapter B of this chapter.

. . . .

Sec. 3.003. (a) <u>Subject to authorization by the commissioners court</u>, each ex officio road commissioner may employ persons for positions in the commissioner's precinct paid from the county road and bridge funds. Each ex officio road commissioner may discharge any county employee working in the commissioner's precinct if the employee is paid from county road and bridge funds. Each ex officio road commissioner also has the duties of a supervisor of public roads as provided by Section 2.009 of this Act.

(b) Each county commissioner, when acting as a road commissioner, shall inform himself of the condition of the public roads in his precinct, shall determine what character of work is to be done on the roads, and shall direct the manner of the grading, draining, or otherwise improving the roads, which

> directions shall be followed and obeyed by all road overseers of his precinct. (Emphasis added.)

_Id._ §§3.001(a); 3.002(a); 3.003(a), (b).

An ex officio road commissioner also has the duties of a supervisor of public roads within his precinct. A road supervisor is required to "supervise the public roads" in the precinct once each month and submit a sworn report to each regular term of the commissioners court showing the following:

> (1) the condition of all roads and parts of roads in his precinct;

> (2) the condition of all culverts and bridges;

> (3) the amount of money remaining in the hands of overseers subject to be expended on the roads within his precinct;

> (4) the number of mileposts and finger-boards defaced or torn down;

> (5) <u>what, if any, new roads of any kind should be opened in his precinct and what, if any, bridges, culverts, or other improvements are necessary to place the roads in his precinct in good condition and the probable cost of the improvements</u>; and

> (6) the name of every overseer who has failed to work on the roads or who in any way neglected to perform his duty. (Emphasis added.)

_Id._ §2.009(a). The supervisor's report is spread on the minutes of the commissioners court "to be considered in improving public roads and determining the amount of taxes levied for public roads." _Id._ §2.009(b). The report must also be submitted to the grand jury at the term first following the report to the commissioners court, together with any contracts made by the court since its last report for work on any road. _Id._ §2.009(c).

The underscored language in sections 3.001 to 3.003 reflect the general understanding that the commissioners court maintains general supervisory control over ex

officio road commissioners. See Attorney General Opinion JM-801 (1987). However, an ex officio road commissioner acting alone may discharge any county employee working in his precinct if the employee is paid from county road and bridge funds. V.T.C.S. art. 6702-1, §3.003(a); Attorney General Opinion MW-362 (1981) (construing former article 6763, V.T.C.S.). It is also understood that a county commissioner acting as ex officio road commissioner may not bind the county to pay claims that are not necessary or proper expenditures of county funds. Attorney General Opinion JM-170 (1984). In Attorney General Opinion JM-334 (1985) we were asked whether a county commissioner acting as ex officio road commissioner could maintain a private road in his precinct. The opinion did not discuss the scope of a commissioner's authority under sections 3.001 to 3.004, but concluded that the commissioners court did not have general authority to maintain private roads in the county. Compare Tex. Const. Art. III, §52f (authorizing counties with population of 5,000 or less to maintain private roads for a fee). If the commissioners court has no such general authority, it follows that an ex officio road commissioner possesses no such power, his authority being subject to commissioners court direction. V.T.C.S. art. 6702-1, §3.001(a).

The emphasized language in section 2.009(a) clearly indicates that a road supervisor has no independent authority to commit county resources to any project, but instead serves to inform the commissioners court of road conditions and availability of funds and to recommend new projects or maintenance work. See Attorney General Opinion MW-331 (1981). The commissioners court retains general supervisory authority over road supervisors. Guerra v. Rodriquez, 239 S.W.2d 915, 920 (Tex. Civ. App. - San Antonio 1951, no writ). See also V.T.C.S. art. 2351, subdivs. 2. and 5. (commissioners court's powers over public roads). The commissioners court remains responsible for authorizing improvements and levying the taxes needed to pay for such projects. V.T.C.S. art. 6702-1, §2.009(b). It must act as a body in fulfilling its duties respecting the public roads of the county and generally may not delegate such duties to road supervisors. Attorney General Opinion MW-331 (1981). A county commissioner, then, has no authority to individually bind the county when acting as road supervisor. Id. Whatever authority a county commissioner exercises as road supervisor must be founded upon section 2.009 and cannot generally be delegated by the commissioners court. Id.

Your question raises two issues.  The  first concerns the conditions under which an ex officio road commissioner may direct  county  employees  to  perform  roadwork  with county  equipment.   The  second  concerns  the  county's authority to  spend county  funds  to construct,  improve, maintain, or repair roads within the corporate limits of a city or town in the county.

Turning to the  first issue, the  previous discussion demonstrates  that  an  ex  officio  road  commissioner's authority  under  article  6702-1,  section  3.003(b),  to "direct the  manner  of  grading, draining,  or  otherwise improving  the  roads"  of  his  precinct  is  subject  to direction from the commissioners court,  section 3.001(a). Under your version  of the facts,  there is some  question whether  the  commissioners  court  exercised  sufficient supervisory control over the ex officio  road commissioner to authorize the construction of the alley in question.

It is  argued that  the  commissioner's actions  were authorized by the  resolution of  the commissioners  court adopted pursuant to article 2352j, V.T.C.S.   That statute provides the following in major part:

> A commissioners court of a county may use its  road  equipment . . . and  employees necessary to operate the equipment to <u>assist</u> <u>another governmental entity  on any  project</u> so long as the  cost does not exceed  $3,000 if:
>
> (a) the use of the equipment or employees does not  interfere with  the county's  work schedule; and
>
> (2) the county  does  not pay  any  costs related to  the  use  of  the  equipment  or employees that the county  would not pay  if the assistance were not  given to the  other governmental entity.  (Emphasis added.)

Assuming for the moment that article 2352j governs in this instance, we  do not believe  that the adoption  of a resolution in  general terms  is  sufficient to  authorize county assistance  to  another governmental  entity  under the statute.  First,  we  note  that the  statute  confers authority on the commissioners court and not on individual commissioners.  The authority conferred must  therefore be exercised by the  commissioners court  as a  unit, and  no individual  commissioner  has  independent  authority  to

commit county resources to assist another governmental entity. See Canales v. Laughlin, 214 S.W.2d 451, 454-455 (Tex. 1948); Attorney General Opinion Nos. MW-331 (1981); WW-1401 (1962). Second, the language of article 2352j relating to costs and the use of county equipment and employees strongly suggests that the commissioners court, in order to make an informed and responsible decision, must review and approve specific projects in advance of their undertaking. It is doubtful that a resolution committing unspecified county assistance of uncertain cost to a city or town at some time in the future would serve this purpose. In the absence of commissioners court approval of a particular project, a county commissioner has no authority to direct county employees to provide assistance to a municipality in the county pursuant to article 2352j.[1]

We do not believe article 2352j governs in this instance, however. Section 2.010 of article 6702-1 addresses the county's authority to construct, improve, or maintain roads within the corporate limits of a city. Section 2.010 prescribes the procedures for authorizing such work, the types of projects that may be undertaken, and the methods whereby such work may be performed or financed. It contains the following relevant language:

> (a) The commissioners court of a county may expend county funds to finance the construction, improvement, maintenance, or repair of a street or alley located in the

---

1. We should note that article 2352j raises questions under article III, section 52 of the Texas Constitution because there is no express requirement that the county receive an adequate consideration or quid pro quo for the assistance it provides to the other governmental entity. Also, a proposed amendment to article III, which would authorize the use of county employees and equipment to perform work for another governmental entity without compensation, was defeated by the voters at the November 3, 1987 election. The proposed amendment contained language virtually identical to article 2352j. See text of proposed Tex. Const. art. III, §52g (reprinted in 1988 cumulative annual pocket part for vol. 1A, Vernon's Annotated Constitution of Texas). We need not decide this issue at this time, for we conclude that article 2352j is inapplicable in this instance.

> county within the limits of an incorporated
> city or town <u>if the work on the street or</u>
> <u>alley is done with the consent and approval</u>
> <u>of the governing body of the city or town</u>.
> (Emphasis added.)

V.T.C.S. art. 6702-1, §2.010(a). The county's authority
thus hinges on the consent or approval of the governing
body of the city or town in which the work is to be done.
It is also clear that the statute confers authority on the
commissioners court, which must act as a body in approving
the expenditure of county funds to finance such projects.
<u>See generally</u> <u>Canales v. Laughlin</u>, <u>supra</u>; Attorney General
Opinion MW-331 (1981).

Two rules of statutory construction support the
conclusion that section 2.010 rather than article 2352j is
the controlling statute. One familiar and established
rule is that when two statutes concern the same general
subject matter, the more specific statutory provision
prevails. <u>See</u> <u>Garza v. State</u>, 687 S.W.2d 325 (Tex. Crim.
App. 1985). Another is that in the case of a clear
conflict between two statutes, the later expression of
legislative intent prevails to the extent of the conflict.
<u>Brown v. Patterson</u>, 609 S.W.2d 287 (Tex. Civ. App. -
Dallas 1980, no writ). Section 2.010 is the more specific
and recent expression of legislative intent. <u>Compare</u> Acts
1985, 69th Leg., ch. 625, at 2323 (enacting section 2.010)
<u>with</u> Acts 1981, 67th Leg., ch. 260, at 668 (enacting
article 2352j).

Section 2.010 codifies in part the rule developed by
the courts concerning the authority of a county to
construct, improve, repair or maintain roads within the
boundaries of a city. That rule states that a county may
exercise such limited authority over city streets provided
the city consents and provided further that such streets
form an "integral part" of the county road system or a
"connecting link" therewith. <u>City of Breckenridge v.</u>
<u>Stephens County</u>, 40 S.W.2d 43 (Tex. 1931); <u>Hughes v.</u>
<u>County Commissioners Court of Harris County</u>, 35 S.W.2d 818
(Tex. Civ. App. - Galveston 1931, no writ); Attorney
General Opinion Nos. H-1018 (1977); WW-1401 (1962); V-971
(1949); V-261 (1947); O-7465 (1946); O-4256 (1941). The
consent of the municipality is required because, as a
general matter, both general law municipalities and home
rule cities have exclusive control over their streets,
alleys, and public highways and their incorporation
removes from the commissioners court the authority to
construct or maintain roads within their boundaries. <u>See</u>

Attorney General Opinion H-1018 (1977). The "integral part/connecting link" requirement is the result of article III, section 52(b), of the Texas Constitution which authorizes counties, other political subdivisions, or "any defined district . . . which may or may not include" municipalities to issue bonds for, among other purposes, the construction and maintenance of roads. The supreme court determined long ago that since municipalities may be an "integral part" of a road district, the commissioners court may expend road district bond funds on town or city streets "where such streets are parts of and form connecting links in county or state highways." City of Breckenridge v. Stephens County, 40 S.W.2d 43, 44 (Tex. 1931).

Section 2.010 does not expressly impose this latter requirement. We note, however, that upon its original enactment, the County Road and Bridge Act did not purport to expand the powers of the commissioners court. Rather, it was merely intended as a revision of the laws concerning county roads and bridges. Acts 1983, 68th Leg., ch. 288, at 1431 (caption). We are constrained to interpret section 2.010 in that light. Accordingly, the commissioners court of a county may spend county funds to finance the construction of a street or alley located within the boundaries of an incorporated city or town in a manner provided in section 2.010 if the governing body of the city or town consents and the street or alley is an integral part of the public roads or highways of the county or a connecting link therewith.

Under your description of the facts, it is apparent that the commissioners court took no action pursuant to section 2.010 with respect to the specific project in question. Furthermore, the facts you describe do not indicate that the governing body of the city gave its consent or approval to the project. Thus, in the circumstances you describe a county commissioner acting as ex officio road commissioner would not be authorized to use county equipment, materials, and employees to construct an alleyway within the corporate limits of a city in the commissioner's precinct.

We note in closing that a county may construct roads within a city that are not public roads of the county by a contract made in accordance with the provisions of Interlocal Cooperation Act, V.T.C.S. article 4413(32c). Attorney General Opinion H-1018 (1977).

## S U M M A R Y

In the absence of commissioners court approval pursuant to section 2.010 of article 6702-1, V.T.C.S., or a contract made in accordance with the provisions of the Interlocal Cooperation Act, article 4413(32c), V.T.C.S., a county commissioner acting as ex officio road commissioner has no independent authority to use county equipment and employees to construct a road or alley within the corporate limits of a city located in the commissioner's precinct.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General